FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS

Aug 4, 2017

OFFICE OF THE CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

| | | |
|---|---|---|
| **JONATHAN BRANDT, Individually,** | § | |
| **KELLY BRANDT AND KENNA BRANDT,** | § | |
| **Individually, and JODI GARDNER AS** | § | |
| **NEXT FRIEND OF GRACIE GARDNER, a** | § | **CAUSE OF ACTION NO.  17-5150** |
| **Minor** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **LEADERTREKS, N.F.P.** | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Jonathan Brandt, Individually, Kelly Brandt and Kenna Brandt, Individually, and Jodi Gardner as Next Friend of Gracie Gardner, a minor, (hereinafter referred to as "Plaintiffs"), in the above entitled and numbered cause, complaining of LeaderTreks, N.F.P. (hereinafter referred to as "Defendant" or "LeaderTreks"), and for cause of action would respectfully show unto the Court and Jury as follows:

### I.
### PARTIES AND JURISDICTION

1.  The amount involved in this action is in excess of $75,000.00, exclusive of interest and costs.  This Court has jurisdiction of this case by the reason of the amount-in-controversy and by reason of diversity-of-citizenship.

2.  Plaintiff Jonathan Brandt is an individual residing in Pottsboro, Texas.

3.  Plaintiffs Kelly Brandt and Kenna Brandt, parents of Jonathan Brandt, are individuals residing in Pottsboro, Texas.

4.   Plaintiff Jodi Gardner, mother of Gracie Gardner, is an individual residing in Dennison, Texas.

5.   Defendant LeaderTreks is an Illinois Corporation with its principal place of business in Illinois. It may be served with via its registered agent, Thomas E. Buess, 111 West Washington St, #1625, Chicago, Illinois 60602.

## II.
## VENUE

6.   The canoe trip giving rise to this claim took place on the Buffalo National River.

7.   The Buffalo National River runs through Newton, Searcy, Marion, and Baxter County, Arkansas. All four counties are included in the Western District of Arkansas.

8.   Venue in this case is proper in the Western District of Arkansas by virtue of Title 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district, as further set out below.

9.   Venue in this case is proper in the Fayetteville Division of the Western District of Arkansas because a substantial part of the events or omissions giving rise to this claim occurred in this division, as further set out below.

## III.
## FACTUAL BACKGROUND

10.   The Buffalo River is a National River located in northern Arkansas. It is approximately 150 miles long and flows from west to east.

11.   Since 2013, public concern about the quality and safety of the water in the Buffalo River has grown and been highly publicized. The pathogens, bacteria, and diseases present in contaminated water pose a serious health threat to those who come in contact with it.

12.   On or about July 10, 2016, Gracie Gardner age 16 and Jonathan Brandt age 18 went

on a week-long canoeing trip along the Buffalo National River in Arkansas beginning at Tyler Bend and ending at Ships Ferry. The trip was organized by LeaderTreks, a company that guides small groups of children and young adults on camping excursions around the country. The trip was guided by LeaderTreks personnel who oversaw the entire trip from selecting the location of the trip, selecting the camp sites, providing food and access to water.

13.    This was the first trip on the Buffalo River for the LeaderTreks guides who hosted Gracie and Jonathan's group.

14.    The LeaderTreks guides did not provide fresh or bottled water to the participants to drink at any point during the trip. Instead, all water drinking water was obtained from the Buffalo River or nearby streams during the one week excursion.

15.    The guides oversaw the gathering of water from the Buffalo River and nearby streams and assured the campers the water was safe to drink and properly treated. This was the first time the guides drank water from the Buffalo River.

16.    The trip was mapped out to include daily access to water sources for drinking. When the group made it to the water source each day, they would collect their daily water supply. The guides would then instruct several participants to treat the water for the whole group with iodine tablets.

17.    Participants drank from different water bottles, but were sometimes told to combine their remaining water with others in order to make room for new water.

18.    One day in particular, the group was unable to make it to the spring and participants were forced to drink warm, stagnant water straight from the river.

19.    Participants drank approximately 3-4 liters of water per day. No participants, including Plaintiffs, drank or treated water without a guide's advice. The guides made all

decisions concerning water during over the course of the trip.

20.     Participants were not provided with any training or warnings related to the dangers of swimming or canoeing in contaminated river water.

21.     Unfortunately, both Gracie Gardner and Jonathan Brandt consumed highly contaminated river water while on the canoe trip. As a result of consuming the contaminated water while on the LeaderTreks's trip, both Gracie and Jonathan developed life threatening digestive infections.

22.     On or about July 15, 2016, the last day of the trip, Gracie Gardner became ill and began to vomit. The vomiting continued into the following day, during which Gracie became more violently ill and began running a high fever. On July 22, 2016, Gracie went to the emergency room with severe stomach cramps and was administered pain medication. That same week, Gracie was hospitalized for several days at TMC in Denison, Texas where she was treated for severe bacterial and parasitic infection.

23.     After she was released, Gracie continued to have serious bouts of vomiting and stomach pains and has been readmitted to various hospitals for surgery, observation, treatment and placement of a feeding tube so that she can obtain nutrition. Her digestive tract is essentially paralyzed and she continues to suffer from all types of digestive disorders. Gracie cannot tolerate anything oral nutrition and currently receives all of her nutrition intravenously.

24.     Just like Gracie, Jonathan began to experience severe digestive problems in the immediate days after the LeaderTreks trip.  On or about July 19, 2016, shortly after coming home from the trip, Jonathan began showing signs of stomach problems. He was admitted to the hospital on July 24, 2016 for drinking the contaminated water and his condition continued to decline. Like Gracie, Jonathan was diagnosed with a bacterial and parasitic infection which

caused significant damage to his digestive tract.

25.     Jonathan has been admitted to various hospitals for digestive disorders and kidney failure for drinking the contaminated water. Jonathan continues to suffer from severe stomach pain and all types of digestive disorders. Due to weight loss Jonathan was placed on a PICC line to receive his nutrition intravenously.

26.     The contaminated water ingested by Gracie and Jonathan permanently damaged the nerves and functioning in their young digestive tracts. Both Gracie and Jonathan suffer from permanent disability due to drinking the contaminated water.

## IV.
## CAUSES OF ACTION

### Negligence

27.     Plaintiffs re-allege the preceding paragraphs as if fully set forth herein.

28.     The negligence of the Defendant, its agents, servants, and/or employees includes, but are not limited to, the following acts or omissions:

   a.     failing to provide bottled or otherwise safe drinking water to the participants;

   b.     failing to obtain drinking water from a safe source;

   c.     failing to properly train its guides, employees and agents about water safety, water treatment and safe locations for gathering drinking water;

   d.     failing to properly research and plan the trip so that water was gathered only from safe water sources;

   e.     failing to properly treat the water so that it was free of contaminants;

   f.     failing to bring and provide adequate provisions so that safe drinking water was provided to the participants;

   g.     negligently providing participants with water was contaminated;

   h.     negligently failing to adequately and correctly warn Plaintiffs of the dangers

of drinking contaminated and stagnant water; and

i.     failing to test the water sources and the water consumed before giving it to the participants to consume.

29.     Defendant owed a duty to Plaintiffs to provide them with safe drinking water while on the adventure trip, and refrain from providing them with contaminated water.

30.     Defendant has a duty to exercise reasonable care in the providing safe drinking water to the participants on their adventure treks.

31.     Defendant, acting by and through its agents and/or representatives, breached these duties and was thereby negligent and careless in providing its services on the adventure trip.

32.     Defendant knew or should have known, in the exercise of ordinary care, that the stagnant and contaminated water it was providing could result in serious injury to the participants. Defendants failed to exercise reasonable care in the providing, testing and treating the water consumed on their trip.

33.     The negligent acts or omissions outlined above, both singularly and concurrently, were the proximate cause of Plaintiffs' damages as described herein.

**Gross Negligence**

34.     Plaintiffs re-allege the preceding paragraphs as if fully set forth herein.

35.     The Defendant's conduct constitutes gross negligence in that it failed to observe even slight care and was careless or reckless to a degree that shows utter indifference to the consequences that may result.

36.     Specifically, the Plaintiffs will show the Defendant knew of the high risk of bacteria, parasites and contaminants present in the water, and the Defendant knew that their current purification program was not likely to eliminate the risk of bacterial and parasitic infection to the participants.

37.     Despite knowing of the risks, the Defendant allowed the participants to drink the contaminated water, without proper warnings. This constitutes reckless disregard of the rights, safety, and welfare of the Plaintiffs by failing to minimize or eliminate the extreme risk of illness through the bacterial and parasitic contamination.

38.     The grossly negligent acts or omissions outlined above, both singularly and concurrently, were the proximate cause of Plaintiffs' damages as described herein.

**Willful Misconduct**

39.     Plaintiffs re-allege the preceding paragraphs as if fully set forth herein.

40.     The Defendant's conduct constitutes willful misconduct in that was intentional and its natural and probable consequence was injury to the Plaintiffs.

41.     Specifically, Defendant knew or had reason to believe that allowing the participants to drink contaminated water and failing to provide fresh or bottled water during the trip would inflict injury on the Plaintiffs, and Defendant continued to do so with conscious indifference to the consequences and with absence of all care for the health and safety of the Plaintiffs.

42.     These actions/inactions directly and proximately caused damage to the Plaintiffs. Defendant should therefore be held liable for punitive and exemplary damages.

**V.
DAMAGES**

43.     The unlawful acts and practices described above are and were a producing and proximate cause of Jonathan Brandy and Gracie Gardner's serious and permanent injuries.  By way of example, Plaintiffs suffered severely injured digestive tracts. To date, Plaintiffs continue to suffer from life threatening digestive disorders. The damages sustained by Plaintiffs include, but are not limited to:

a.   Past and future pain and suffering;

    b.  Past and future disability;

    c.  Past and future medical expenses;

    d.  Past and future disfigurement; and

    e.  Past and future mental anguish and emotional distress.

### VI.
### JURY DEMAND

44.    Plaintiffs respectfully request that a jury be impaneled to decide the factual issues of this case.

### VII.
### PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendant be cited to appear and answer herein, and that upon final trial, Plaintiffs have judgment against Defendant, for those damages described above and in the full amounts allowed by law, specifically including, but not limited to:

    a.    a judgment in excess of that required for Federal jurisdiction in diversity of citizenship;

    b.    pre-judgment interest;

    c.    post-judgment interest;

    d.    punitive damages;

    e.    costs and expenses; and

    f.    all such other relief, whether at law or in equity, to which Plaintiff may show herself justly entitled.

Respectfully submitted,


/s/ *David H. Williams*
**David H. Williams**
Ark. S, Ct. No. 75139
**LAW OFFICE OF DAVID H. WILLIAMS, PLLC**
211 S. Spring Street, 2nd Floor
Little Rock, AR 72201
Telephone:  501-372-0038
Facsimile: 501-376-9347
Email:  David@dhwlaw.net


**Andrew L. Payne**
Ark. S, Ct. No. 2010007
**Todd H. Ramsey**
TX State Bar Card No. 00797283
**PAYNE MITCHELL LAW GROUP**
3500 Maple Avenue
Suite 1250
Dallas, TX  75219
Telephone:  (214) 252-1888
Facsimile:  (214) 252-1889
Email:  Andy@paynemitchell.com
Email:  Todd@paynemitchell.com

**ATTORNEYS FOR PLAINTIFFS**